**SO ORDERED: August 09, 2005.**

Anthony J. Metz III
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:                                            )
                                                  )
EARL HAYWOOD CLARK and                            )        Case No. 04-10918-AJM-7A
CARMEN LYNN CLARK                                 )
                                                  )
                        Debtors.                  )
_____)

**ORDER GRANTING TRUSTEE'S MOTION FOR TURNOVER
AND ORDER DIRECTING TURNOVER OF FUNDS**

*I. Background*

        The Debtors filed their chapter 7 case on June 15, 2004 (the "Petition Date").

Jenice Golson Dunlap, the Chapter 7 Trustee, declared the case an asset case on

September 28, 2004 and filed her motion for turnover on January 3, 2005 (the "Trustee's

Motion").  The Trustee's Motion sought turnover of a portion of the Debtors' tax refund

and the funds on deposit in the Debtors' bank accounts as of the Petition Date, after

subtracting the Debtors' allowable exemptions.  On February 3, 2005 the Debtors filed a

1

general objection to the Trustee's Motion.

On April 1, 2005, the Court held a hearing on the Trustee's Motion and the Debtors' Objection. At the hearing, the Debtors orally asserted a new objection to turnover and argued that some or all of the funds in the Debtors' bank accounts were "exempt" under the Indiana Wage Garnishment Statute [1] based on the rationale of an unpublished decision rendered by Judge Coachys in an unrelated case, *In re Bubb* [2]. The Trustee asserted that the only allowable exemption available to the Debtors was the joint $200.00 intangible personal property exemption (*i.e.*, $100 per each Debtor) which the Debtors had originally claimed in their *Schedule C* pursuant to IC § 34-55-10-2(b)(3). The Court took ruling on the matter under advisement, pending receipt of the parties' stipulations as to facts and issues. The Debtors filed a brief in opposition to the Trustee's Motion on May 4, 2005 and the Trustee filed her brief in support of the Trustee's Motion on May 24, 2005. Stipulations of facts and issues were also filed on May 24, 2005. All briefs have been submitted and the matter is ripe for ruling. This entry constitutes findings of fact and conclusions of law to the extent required under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### A.  Stipulated Facts

The parties have stipulated to the following pertinent facts:

In their *Schedule B -Personal Property*, which was filed along with the Petition on the Petition Date, the Debtors listed among their assets, a "Checking Account" and a

---

[1]  Ind Code §24-4.5-5-105.

[2]  *In re Bubb*, Case No. 02-05321-JKC-7 (entry of October 4, 2002).

2

"Savings Account", both maintained at First Indiana Bank, which the Debtors valued in their *Schedule B* at $20.00 and $50.00, respectively.  In their *Schedule C- Property Claimed as Exempt,* the Debtors claimed the $70.00 value of these bank accounts as exempt under IC § 34-55-10-2(b)(3). [3]

The Trustee learned at the Debtors' §341 meeting that as of the Petition Date, the Debtors actually held three (3) bank accounts with First Indiana Bank and that there was more money in the three (3) accounts than as shown by the Debtors in their Schedules. Indeed, according to monthly statements subsequently obtained from the Debtors by the Trustee, as of the Petition Date the Debtors held funds on deposit in their First Indiana bank accounts in the following amounts:

(a)  Checking Account # 521012931 in the names of "Earl H. Clark and Carmen L. Clark" -- $1,871.04;

(b)  Savings Account # 527012335 in the names of "Earl H. Clark and Carmen L. Clark" -- $2,122.63; and

(c)  Savings Account # 521016571 in the names of "Earl H. Clark, Carmen L. Clark and Zachary C. Clark" -- $132.04.

The Debtors' above-referenced bank account balances thus totaled to $4,125.71 - an amount significantly greater than the $70.00 value shown and claimed as exempt by the Debtors in their Schedules.

The Debtors' monthly statements further showed that on the Petition Date, a

---

[3]  As of the Petition Date,  Indiana Code § 34-55-10-2(b)(3) provided a bankruptcy exemption for "intangible personal property, including choses in action (but excluding debts owing and income owing) of one hundred dollars ($100.00)."  The amendment to this portion of the exemption statute can be found in Ind Code §34-55-10-2(c)(3) and became effective on July 1, 2005.  Ind Code §34-55-10-2(c)(3) now allows for each debtor a $300 exemption in deposit accounts and cash.  This bankruptcy case was filed before the effective date of the amendment and therefore the Debtors are entitled each to only the $100 exemption under (former) Ind. Code §34-55-10-2(b)(3).

deposit was made to the Debtors' Savings Account #521012931 in the amount of $100.00. The $100.00 deposit was from the payroll account of Debtor Carmel L. Clark's employer, JWF Specialty Company.

Similarly, on the Petition Date, there were two (2) deposits made to the Debtors' Checking Account #527012353 in the amounts of $344.85 and $1,227.90, respectively. The source of the latter two (2) deposits was Debtor Carmen L. Clark's employer, JWF Specialty Company.

The above payroll deposits made to the Debtors' accounts on their Petition Date total $1,672.75. Thus, the amount of funds on deposit as of the Petition Date totaled $5,898.46. Deducting the Debtors' allowable $200 exemption, the Trustee seeks turnover of $5,698.46 (the "Funds").

The parties agree that the issue presented and discussed in their respective briefs is whether Debtors may claim some or all of the funds which were on deposit in their First Indiana Bank checking and savings accounts as of the Petition Date as exempt under the Indiana Wage Garnishment Statute and/or under the rationale of the decision rendered in *In re Bubb*.

## II. Discussion

### A. The Debtors have neither properly scheduled, nor properly sought to exempt, the sums for which the Trustee seeks turnover

As a threshold matter, it should be noted that the Debtors have never properly claimed the so-called "exemption" they now would have the Court enforce.

Sections 521 and 541 of the Bankruptcy Code, and Rule 1007(b)(1) of the Rules

of Bankruptcy Procedure collectively require a debtor to list as assets of his estate in bankruptcy "all legal or equitable interests of the debtor in property as of commencement of the case."  The term "legal or equitable interests…in property" has been broadly interpreted to include all legally enforceable assets or rights. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05, 209, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Jones*, 768 F.2d 923, 926 (7th Cir. 1985).  Estate property clearly encompasses the bank account funds held by the Debtors as of the Petition Date.

Likewise, under § 522 of the Code, and Rules 1007(b) and 4003(a) of the Rules of Bankruptcy Procedure, a debtor is also required to list all property which he claims as exempt in  his Schedules and the basis on which he claims such exemption.  In the instant case, the Debtors have not only failed to properly list the sums which were actually in their three (3) bank accounts on their filing date, they also have never properly claimed the sums as exempt under the Indiana Wage Garnishment Statute.  Given the fact that, unless properly claimed as exempt, the sums in the Debtors' First Indiana Checking and Savings Accounts remain estate property, the Trustee argues that there is presently no procedural barrier to their turnover.

Even if the sums in the accounts are fully or partially exempt under the Indiana Wage Garnishment Statute, the Debtors have never properly filed the necessary amendments to properly list the funds in the accounts in their Schedules or properly claim them as exempt under the Indiana Wage Garnishment Statute.  The current status of the Debtors' claimed exemptions is that the Debtors have only formally scheduled and sought to exempt $70 of the funds in two of their three bank accounts under the Indiana "general intangibles" exemption.  However, even if the Debtors had amended their

5

Schedule C and claimed the exemption they now argue applies, the exemption would be disallowed since Indiana's Wage Garnishment Statute does not apply here.

### B.  The CCPA and the Indiana Wage Garnishment Statute

To determine the underlying purpose and application of Indiana's Wage Garnishment Statute, its legislative history should be considered.  In 1968, Congress passed the Consumer Credit Protection Act ("CCPA") 15 U.S.C. §§ 1671-77, which imposed nationwide restrictions on garnishments in order to protect debtors from what Congress perceived as predatory lending practices on the part of some credit institutions in certain jurisdictions.  In passing the CCPA, Congress mandated that its garnishment limitations would preempt those set out in any other, less protective, state garnishment statutes.  *See,* 15 U.S.C. § 1673(c).  The evil which Congress sought to address by its enactment of the CCPA was a lack of uniformity in State garnishment laws.  Specifically, draconian garnishment statutes in certain states were perceived by Congress as being the root cause of a large number of individual bankruptcy filings in those jurisdictions, as compared to situations prevailing in other State venues, with more lenient garnishment laws, where the number of bankruptcy filings were comparatively fewer.  This lack of uniformity among state garnishment statutes was seen by Congress as creating an unfavorable disparity in the pools of bankruptcy filings among the various states.  By its enactment of the CCPA, Congress preempted the area of garnishment by eliminating any state garnishment statutes that afforded debtors with less protections than those contained in the CCPA.  By thus abating the harshness of some state garnishment laws, Congress sought to reduce bankruptcy filings generally and make for greater uniformity among the various states in the kind and number of those persons who were forced into bankruptcy.

6

*In re Lawrence*, 204 B.R. 115, 117, 122-123 (Bkrtcy. E.D. Tenn. 1997)[Tracing the history and rationale for Congressional passage of the CCPA].

   In response to Congress' enactment of the CCPA, Indiana, like many other states whose former garnishment laws had been rendered obsolete, enacted its own version of the CCPA.  In so doing, the Indiana Legislature adopted the operative provisions of the CCPA almost verbatim. The resultant Indiana Wage Garnishment Statute, IC § 24-4.5-5-105, provides in pertinent part as follows:

> **Limitation on garnishment and proceedings supplemental to execution**;
>
> "(1)  For the purposes of IC 24.4.5-5-101 through IC 24-4.5-5-108:
> (a) "disposable earnings" means that part of the earnings of an individual including wages, commissions, income, rents, or profits remaining after the deduction from those earnings of amounts required by law to be withheld;
>
> (b) "garnishment" means any legal or equitable proceedings through which the earnings of an individual are required to be withheld by a garnishee, by the individual debtor, or by any other person for the payment of a judgment; and
> …
>
> (2) …[T]he maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment to enforce the payment of one (1) or more judgments against him may not exceed:
>
>> twenty-five percent (25%) of his disposable earnings for that week; or
>>
>> the amount by which his disposable earnings for that week exceed thirty times the federal minimum hourly wage prescribed by 29 U.S.C. 206(a)(1) in effect at the time the earnings are payable;
>
> whichever is less.  In the case of earnings for a pay period other than a week, the earnings shall be computed upon a multiple of the federal minimum hourly wage equivalent to thirty (30) times the federal minimum hourly wage as prescribed in this section."

7

IC § 24-4.5-5-105(2); *See also,* 15 U.S.C § 1672(a).

In the same vein, both the CCPA and the Indiana Wage Garnishment Statute define "garnishment" in a similar fashion as "any legal or equitable proceedings through which the earnings of an individual are required to be withheld by a garnishee, by the individual debtor, or by any other person for the payment of a judgment."  IC § 24-4.5-5-105(1)(b); 15 U.S.C. § 1672(c).

Both the CCPA, and its Indiana spin-off, IC § 24-4.5-5-105, were thus enacted to serve as limitations on the garnishment process, brake overreaching by creditors, and thereby eliminate the need for resort to bankruptcy by otherwise aggrieved debtors. Although it appears that there is nothing in the legislative history of either statute reflecting any intent by their respective draftsmen to create new federal or state exemptions for debtors who within the context of a *bankruptcy,* (and thus, intended to head off bankruptcies, not create new exemptions inside bankruptcy), this Court's inquiry here will be limited to whether the Debtors, who are in possession of wages paid to them, may exempt a portion of them in bankruptcy and thus shield them from the Chapter 7 Trustee under Indiana's Wage Garnishment Statute.   The resolution of whether the Debtors would be entitled to an exemption under Indiana's Wage Garnishment Statute *had the Funds still been in the hands of their employers* (and thus, whether *Bubb* should be revisited) is left for another day.

### C.  Neither the Indiana Wage Garnishment Statute, nor the holding in In re Bubb, authorizes a bankruptcy exemption for wages that have been paid to the Debtors

The Debtors argue that the reasoning of the *Bubb* case allows the Debtors here to

8

exempt a portion of the Funds.  In *Bubb*, a chapter 7 debtor was owed, but had not been

paid, back salary by his employer as of his bankruptcy filing date.  In his Schedules, the

debtor claimed $8,664.72 as exempt under the Indiana Wage Garnishment Statute.  The

Trustee objected to the exemption claim and, at a hearing on the objection argued that IC

§ 24-4.5-5-105 was not recognized as a bankruptcy exemption because it was not among

those enumerated in IC § 34-55-10.  In his decision, Bankruptcy Judge Coachys correctly

rejected this argument, noting that Indiana's exemptions are not all embodied in IC § 34-

55-10, "but are scattered throughout the Indiana Code".   While noting that there were no

Indiana decisions specifically addressing whether the Wage Garnishment Statute

provided an exemption in bankruptcy, Judge Coachys cited *Mims v. Commercial Credit

Corp,* 261 Ind. 591, 307 N.E.2d 867 (Ind. 1974) for the proposition that "in Indiana a

debtor has a constitutional right to have a reasonable amount of his property exempted

from garnishment."  Given such constitutional underpinnings, the Court reasoned that the

Wage Garnishment Statute applied to both non-bankruptcy and bankruptcy debtors

because to hold otherwise "would deprive a certain class of creditors - i.e., those in

bankruptcy, of their constitutional right to the 'necessary comforts of life.'"  In a

footnote, the court also cited several cases from other jurisdictions holding that state

garnishment statutes may be claimed in bankruptcy. [4]   After further noting that

"[b}ecause the Trustee has failed to set forth any justification for holding differently," the

Court found that "§ 24-4.5-5-105 constituted an exemption under Indiana law that could

---

[4] The cases so cited were: *In re Urban,* 262 B.R. 865 (Bkrtcy. D. Kan. 2001); *In re Robinson,* 241 B.R. (9th Cir. BAP 1999), *In re Sanders*, 69 B.R. 569 (Bkrtcy. E. D. Mo. 1987); and *In re Stewart*, 132 (Bkrtcy. D. Utah, 1983).

be claimed in bankruptcy."

The Court here need not reach the question of whether *Bubb* should be revisited or whether Indiana's Wage Garnishment Statute may be claimed in bankruptcy, because that statute simply doesn't apply here.  In *Bubb,* the wages had yet to be paid to the debtor; here the Debtors have received and continue to hold their wages.

Courts have clearly held that any limitations upon garnished wages apply only while the wages are in the hands of third parties; once they are paid to the debtor, the debtor cannot avail himself of the protections afforded under the garnishment statutes. The Bankruptcy Court for the Eastern District of Tennessee undertook an exhaustive analysis of the history behind the CCPA and Tennessee's wage garnishment statute in *In re Lawrence*, [5] and concluded that neither the CCPA nor the Tennessee wage garnishment statute applied to wages paid over to the debtor:

> "As has now been shown, almost all the cases interpreting the CCPA, both state and federal, have held that the federal statute does not prevent creditors from pursuing earnings once they are in the hands of the debtor.  Subchapter II of Chapter 41, Title 15, United States Code, which comprises the CCPA, is entitled, "Restrictions on Garnishment," and that seems to be descriptive of its limited purpose - moderating the severity of garnishments to prevent bankruptcies. Nevertheless, some courts have pointed out that allowing creditors to pursue earnings in the hands of the debtor obviously affords the debtor less protection than he would have under a wage exemption statute that extended protection to a defined fund of wages (citations omitted). That is certainly true and choices must be made.
>
> The choice between a limitation on the process of garnishment and the full protection of a fund by exemption is, of course, a matter of policy for the state and federal legislatures.  Congress certainly could have chosen to protect a fund represented by 75% of a debtor's wages by exempting them entirely, but it did not do so, although it is well acquainted with the procedure.  Congress could also have provided, as some states do, that wages in the hands of debtors receive

---

[5] 205 B.R. 115 (Bkrtcy. E.D. Tenn. 1997)

protection from all forms of execution for some specific period of time while the fund remains uncommingled and traceable to wages. It did not do this either. Finally, Congress could have established a wage exemption in § 522(d) of the Bankruptcy Code, where it set forth a long list of other exemptions. Of course, it did not do so. Possibly, in choosing a lesser level of protection for wages, Congress took a quite practical view of things and reflected on the difficulties a creditor will always have in levying on cash in the hands of a debtor already alerted to his peril by the loss of 25% of his wages. Thus Congress may have concluded that a full wage exemption was unnecessary in practice, and Tennessee might also have thought such a balance reasonable when ...it decided to copy the CCPA. Relying on the foregoing authorities, this court concludes that the Tennessee garnishment statute is not a general wage exemption statute and that, like the CCPA, it only regulates the process of one form of execution: the garnishment of earnings in the hands of a third person.

*Id.* at 123.

Like the CCPA, the Indiana Wage Garnishment Statute is entitled "Limitation on garnishment and proceedings supplemental to execution". Like the CCPA, its Indiana clone provides that its provisions are only expressly made operative in a garnishment scenario. The Statute makes no provision for its operation, and affords no protections, after the funds are paid over to a debtor by his employer. As noted in the *Lawrence* case, the Indiana Legislature could certainly have exempted the unprotected 75% of the Debtors' wages by making them exempt from all forms of creditor process - such as attachment, execution, seizure, etc.- had it wished to do so. It did not.

The Indiana Wage Garnishment Statute reveals that it is, at best, only applicable in a *garnishment* context, and a garnishment connotes that the funds are held by one who owes the debtor the funds, not the debtor. Despite the Debtors' argument that the wages paid to them can be traced back from them to their employer, this Court holds that the garnishment limitations otherwise available under the Indiana Wage Garnishment Statute are not applicable to wages that have been received by and are in the hands of the

11

Debtors.  The Court's conclusion is reinforced by the fact that (1)  the Debtors have cited

to this Court no Indiana case construing the Indiana Wage Garnishment Statute's

provisions as either permitting, or prohibiting, a creditor's execution on a debtor's wages

after they have been paid over to a debtor and (2) other courts have considered this issue

and almost uniformly have come to the conclusion that a debtor loses the protections of a

garnishment statute once the wages sought to be protected have been paid over to the

debtor.  [6]

### III.  Conclusion

The Debtors have never properly claimed the exemption in the deposits they now

espouse.  Even if they had claimed it, the Indiana Wage Garnishment Statute has no

application here, where the wages have already been paid over to the Debtors.  Finally,

and perhaps most significantly, the Indiana Wage Garnishment Statute, like its parent, the

CCPA, was only designed to operate where the wages to be paid to the debtor were still

in the hands of third parties.  It has no application to wages that have been paid to the

debtor.

For these reasons, the Debtors' objection is OVERRULED and the Trustee's

---

[6] See, *Frazier, Ryan Goldberg, Keyt & Lawless v. Smith,* 184 Ariz. 181, 185, 907 P.2d 1384, 1388 (1995); C*aulley v. Caulley*, 777 S.W. 2d 147, 150-151 (Tex.App. 1989), *aff'd in part and rev'd in part* 806 S.W.2d 795 (1991); *Ellis Sarasota Bank & Trust Co. v. Nevins*, 409 So.2d 178, 179 (Fla.App. 1982),(all holding that, once funds are in the hands of a debtor, they are not subject to garnishment and therefore, the debtor cannot avail himself to the garnishment statute to exempt a portion of the funds).  In *John O. Melby & Co. Bank v. Anderson*, 88 Wis.2d 252, 276 N.W.2d 274 (1979) the Court held that "[i]t could not be clearer that Congress was concerned with the protection of earnings in the ordinary payroll process.  There is nothing to suggest that restrictions on garnishment were intended to apply to wages after they had been paid over to the worker".  276 N.W.2d at 277-78.  *See also, Edwards v. Henry,* 97 Mich App. 173, 293 N.W.2d 756 (1980) (Following *Melby* and holding that the CCPA did not protect wages deposited into a debtor's bank account).

Motion is GRANTED.  IT IS FURTHER ORDERED that the Debtors turn over the

Funds within sixty (60) days from the date of this order.

# # #

Distribution:

Paul D. Gresk
Joseph W. Murphy
GRESK AND SINGLETON
Gateway Plaza, Suite 410
950 North Meridian Street
Indianapolis, Indiana 46204

Mark  S. Zuckerberg
Law Office of Mark S. Zuckerberg, P.C.
333 N. Pennsylvania Street
Indianapolis, IN 46204

Jenice Golson-Dunlap
One North Pennsylvania, Suite 1050
Indianapolis, IN 46204

U.S. Trustee
101 West Ohio Street, Suite 1000
Indianapolis, IN 46204

14